UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
GARY L. GAYDEK,

                          Plaintiff,                05-CV-0679

               v.                            **DECISION**
                                                   **and ORDER**
JO ANNE B. BARNHART, Commissioner
of Social Security

                          Defendant.
_____

## INTRODUCTION

Plaintiff Gary L. Gaydek ("Plaintiff") brings this action pursuant to the Social Security Act § 216(i) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits.[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") Theodore Burock denying his application for benefits was against the weight of substantial evidence contained in the record and contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)("Rule 12(c)"), on the grounds that the ALJ's decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion, and

---

[1] This case was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated April 5, 2007.

cross-moves for judgment on the pleadings, on the grounds that the Commissioner's decision was erroneous. The Court finds that the decision of the Commissioner for the reasons set forth below, is supported by substantial evidence, and is in accordance with applicable law and therefore the Commissioner's motion for judgment on the pleadings is hereby granted.

## BACKGROUND

On July 30, 1998, Plaintiff, at that time a 43 year-old corrections officer, filed his first application for Disability Insurance Benefits. Plaintiff alleged a disability since July 1, 1998. Plaintiff's application was denied at the initial and reconsideration levels, and an unfavorable decision was rendered by the ALJ on August 18, 1999. Thereafter, Plaintiff appealed to the Social Security Appeals Board on August 27, 1999 which affirmed the ALJ's decision and denied Plaintiff's request for reversal.

On January 9, 2001, Plaintiff, filed his second application for Disability Insurance Benefits. Plaintiff's second application was also denied and the ALJ rendered an unfavorable decision on September 26, 2002. Further, Plaintiff appealed to the Social Security Appeals Board on November 21,

2002. The Social Security Appeals Board denied Plaintiff's request.

On November 21, 2002, Plaintiff filed his third application for Disability Insurance Benefits. This application was denied by the state agency on February 3, 2003, and a request for hearing was timely filed on February 11, 2003. Plaintiff alleged that he became disabled on September 27, 2002, due to residuals of a gunshot wound, post-traumatic stress disorder, and dysthymia. In a decision dated February 23, 2005, ALJ Burock found that Plaintiff was not disabled within the meaning of the Social Security Act.

ALJ Burock's decision became the final decision of the Commissioner when the Social Security Appeals Board affirmed ALJ Burock's decision on August 19, 2005. On September 22, 2005, Plaintiff filed this action.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Monqeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that her decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief,

judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II. **The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

ALJ Burock in his decision found that Plaintiff was not disabled within the meaning of the Social Security Act. ALJ Burock adhered to the Social Security Administration's 5-Step sequential evaluation analysis for evaluating appointments for disability benefits. See 20 C.F.R. § 404.1520.[2] Under Step 1 of the process, ALJ Burock found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (Transcript of Administrative Proceedings at pages 22, 32) (hereinafter "T.").

At Steps 2 and 3, ALJ Burock found that Plaintiff was subject to medically determinable mental impairments (post-traumatic stress disorder and dysthymia). However, AlJ Burock concluded that Plaintiff's impairments, such as, residuals of

---

[2]Five-step analysis includes: (1) ALJ considers whether claimant is currently engaged in substantial gainful activity; (2) if not, ALJ considers whether claimant has severe impairment which significantly limits his physical or mental ability to do basic work activities; (3) if claimant suffers such impairment, third inquiry is whether, based solely on medical evidence, claimant has impairment which is listed in regulations Appendix 1, and if so, claimant will be considered disabled without considering vocational factors; (4) if claimant does not have listed impairment, fourth inquiry is whether, despite claimant's severe impairment, he has residual functional capacity to perform his past work; and (5) if claimant is unable to perform past work, ALJ determines whether claimant could perform other work. See id.

a gun-shot wound, the post-traumatic disorder, and dysthymia, which were severe within the meaning of the Regulations, were not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4. (T. at 27, 32). Further, at Steps 4 and 5, ALJ Burock concluded that Plaintiff retained the residual functional capacity to perform less than the full range of work at the light exertional level. (T. at 30, 32-33). ALJ Burock determined that Plaintiff required a sit/stand option and was limited to work that entailed routine, repetitive tasks with no public contact, and minimal close cooperation with co-workers to achieve job tasks. (T. at 30, 32-33).

Further, ALJ Burock found that Plaintiff's past work as a corrections officer exceeded the exertional requirements of his residual capacity and therefore, Plaintiff could not perform his past relevant work. (T. at 30-31, 33). ALJ Burock finally concluded that Plaintiff was not disabled as he was capable of making an adjustment to other work in the national economy. (T. at 31-33).

Based on the entire record, and particularly the medical evidence in the record, I find that ALJ Burock properly

concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

### A. ALJ Burock properly evaluated the medical opinions in the record.

ALJ Burock properly relied upon substantial objective evidence as well as Plaintiff's own testimony, in weighing the medical evidence in the record. ALJ Burock primarily relied upon the opinions of the Plaintiff's consultative examining physicians, Dr. Holland and Dr. Gowda, and afforded little weight to the opinion of Plaintiff's treating physician, Dr. San Luis.

The Social Security regulations require that, a treating physician's opinion will be controlling if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).

Dr. San Luis' opinion was not well supported by his own clinical findings and was inconsistent with other substantial evidence and physicians' opinions contained in the record. Further, the evidence reflected no notes from Dr. San Luis to support his opinion that Plaintiff was disabled. (T. at 28).

On April 28, 2003, Dr. San Luis, opined that Plaintiff had a gunshot wound in his chest and abdomen and, as a result, had developed a chest wall defect. (T. at 663). Further, Dr. San Luis reported that Plaintiff had undergone extensive rehab and was treated with intercostal nerve blocks but, continued to have pain. (T. at 664). Dr. San Luis noted that the Plaintiff had performed light duty and sitting jobs however, these had not worked. (T. at 665). Further, Dr. San Luis, stated that Plaintiff could neither sit nor stand because of pain in the chest, abdomen and back, and that he was incapable of pulling or pushing anything. (T. at 666).

However, in an opinion dated November 22, 2004, Dr. San Luis, stated that Plaintiff could walk twenty minutes a day, stand thirty minutes a day, and sit for thirty minutes a day. (T. at 744). Additionally, Plaintiff himself claimed that he could walk and sit for half an hour a day at a time. Plaintiff reported that he watched television, prepared small meals, took care of his personal needs, drove a car, managed his money, plowed snow, mowed his lawn, and read. (T. at 64-92, 311, 569-75).

Plaintiff also stated that he went to the gym, drove a motorcycle, went up and down the stairs at least 15 times a day (because his bedroom and bathroom were on the upper

floor), and vacationed in Las Vegas. (T. at 58, 75, 93-94, 768, 776). Further, Dr. San Luis repeatedly reported that Plaintiff had no back pain, radiation to the legs, joint pain, or joint swelling. (T. at 760).

Therefore, Dr. San Luis' opinions were not supported by his own clinical findings. Additionally, the objective medical evidence contained in the record did not support Dr. San Luis' opinions. Dr. Holland, Plaintiff's consultative examining physician, reported that Plaintiff's gait was normal, his lungs were clear and normal, abdomen was soft and nontender, he had full range of motion and he had no neurological deficits and no muscle atrophy. (T. at 630).

Similarly, the State Agency physicians, also noted that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (T. at 212-14). ALJ Burock gave some weight to the opinions of the State Agency physicians who opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, sit for six hours in an eight-hour workday and had unlimited pushing and/or pulling ability. (T. at 211).

Dr. San Luis' opinion was, therefore, inconsistent with the State Agency physicians' medical testimony and was also

inconsistent with the opinion of Plaintiff's consultative physician, Dr. Gowda. ALJ Burock concurred with Dr. Gowda's opinion that Plaintiff was limited to work at the light exertional level with a sit/stand option. (T. at 28).

In light of the evidence contained in the record, I find that ALJ Burock's conclusion was supported by substantial objective evidence in the record consisting of Plaintiff's own testimony, the opinions of other physicians and was correct in affording little weight to Dr. San Luis' opinion. (T. at 28).

B. <u>ALJ Burock fulfilled his affirmative obligation to develop the administrative record.</u>

Where the clinical findings of Plaintiff's physicians are inadequate to evaluate appointments for disability benefits, it is the ALJ's duty to seek additional information from the treating physicians *sua sponte*. See Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

Further, a treating physician need only be recontacted to "seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(d).

Plaintiff alleges that the ALJ made a reference to Dr. Koritz, who treated Plaintiff for pain management, however there was no record of a report by Dr. Koritz. (Pl. Br. at 12). Plaintiff alleges that this was a gap in the record and the ALJ should have recontacted Dr. Koritz. (Pl. Br. at 12). However, contrary to Plaintiff's contention the ALJ did in fact contact Dr. Koritz but no medical records were received. (T. at 322).

Therefore, Plaintiff's treating physicians' reports did not contain any gaps or inadequate evidence. Additionally, the record contained various x-rays, clinical findings, and functional assessments to support ALJ Burock's finding of Plaintiff's residual functional capacity. Therefore, the record was based on medically acceptable clinical and laboratory techniques, containing the necessary information in compliance with the Social Security regulations.

ALJ Burock, therefore, correctly found that the medical evidence was neither incomplete nor inadequate and there was no need to recontact Plaintiff's treating physicians. The ALJ's decision was based upon substantial evidence in the record.

**CONCLUSION**

For the reasons set forth above, I grant Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          June 22, 2007